[Cite as *Toledo v. State*, 2019-Ohio-1681.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

City of Toledo

Appellee

v.

State of Ohio, et al.

Appellants

Court of Appeals No.  L-18-1168

Trial Court No.   CI0201501828

**DECISION AND JUDGMENT**

Decided:  May 3, 2019

* * * * *

Dale R. Emch, Law Director, Jeffrey B. Charles, Chief of Litigation,
and John T. Madigan, Senior Attorney, for appellees.

Michael DeWine, Ohio Attorney General, Nicole M. Koppitch and Halli
Brownfield Watson, Assistant Attorney Generals, for appellants.

* * * * *

**SINGER, J.**

## Introduction

{¶ 1} Appellants, the state of Ohio and Attorney General Michael DeWine, appeal

from the July 10, 2018 judgment of the Lucas County Court of Common Pleas, where

summary judgment was granted to appellee, the city of Toledo.  For the reasons that follow, we affirm in part, and reverse in part.

## Assignments of Error

1.  The trial court erred in holding that portions of Amended Senate Bill 342 ("the State Traffic Camera Law") are unconstitutional when those provisions do not directly injure the City and the City does not have standing to challenge them.  (Opinion and Judgment Entry "JE").

2.  The trial court erred in finding state statutes violated the Home Rule Amendment when the City failed to show a conflict between the enjoined provisions and its ordinance.  (JE).

3.  The trial court erred in holding that portions of the State Traffic Camera Law do not serve a statewide interest and serve only to limit municipal authority.  (JE at pp. 8-9).

4.  The trial court erred in finding that the provisions it enjoined do not prescribe a rule of conduct on citizens generally.  (JE at pp.8-9).

## Background

{¶ 2} This matter was originally filed on March 13, 2015.  Appellee, the city of Toledo, sought declaratory judgment, temporary restraining order, and preliminary and permanent injunctions against appellants, the state and attorney general of Ohio.  Appellee brought the action to challenge State Bill No. 342, Ohio's traffic-camera law and, after cross-motions for summary judgment, the trial court held in favor of appellee on April 27, 2015.

2.

**{¶ 3}** The trial court permanently enjoined appellants from enforcing eight statutory provisions of the traffic-camera law, finding those provisions limited appellee's power to enact and enforce its own legislation in violation of the home-rule provision stated within Article XVIII, Section 3 of the Ohio Constitution. Pursuant to this home-rule provision, appellee had enacted its own municipal code ordinance to address and impose civil penalties for traffic violations captured by its traffic cameras, under Toledo Municipal Code 313.12, prior to the passage and enactment of S.B. 342 (Ohio's traffic-camera law).

**{¶ 4}** On July 8, 2016, we affirmed the trial court and upheld the injunction against the enforcement of R.C. 4511.093(B)(1) and (3), 4511.095, 4511.096, 4511.097, 4511.098, 4511.099, 4511.0911(A) and (B), 4511.0912. *See City of Toledo v. State*, 2016-Ohio-4906, 56 N.E.3d 997 (6th Dist.). Our majority held that these provisions fail the fourth factor in the "general law" legal test derived from *City of Canton v. State*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963. *Id*. at ¶ 48.

**{¶ 5}** However, on December 13, 2017, the Supreme Court of Ohio vacated and remanded the case to the trial court to apply *Dayton v. State*, 151 Ohio St.3d 168, 2017-Ohio-6909, 87 N.E.3d 176. *See City of Toledo v. State*, 152 Ohio St.3d 496, 2017-Ohio-8955, 98 N.E.3d 222. The *Dayton* majority individually analyzed and enjoined enforcement of R.C. 4511.093(B)(1), 4511.0912, and 4511.095. *Dayton* at ¶ 35.

**{¶ 6}** On remand, the trial court individually analyzed the Ohio traffic-camera provisions it had previously invalidated on April 27, 2015. Consistent with *Dayton*, the

3.

trial court affirmed its prior decision to invalidate R.C. 4511.093(B)(1), 4511.0912, and 4511.095, and, additionally, found the law as articulated in *Canton* and *Dayton* further applied to invalidate R.C. 4511.093(B)(3), 4511.096, 4511.097, 4511.098, 4511.099, and 4511.0911(A) and (B).  The judgment was journalized on July 10, 2018, and appellants timely appeal.

## Standard of Review

{¶ 7} When reviewing a trial court's summary judgment decision, the appellate court conducts a de novo review.  *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).  Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law.  Civ.R. 56(C).  *Accord Lopez v. Home Depot, USA, Inc.*, 6th Dist. Lucas No. L-02-1248, 2003-Ohio-2132, ¶ 7.

## Legal Analysis

{¶ 8} In all four of their assigned errors, appellants assert the trial court committed reversible error by determining appellee had standing to bring this action, and by enjoining statutes of the Ohio traffic-camera law under *Canton* and *Dayton*.

{¶ 9} Appellee contends no error occurred below under *Canton* and *Dayton*, as those statutes were correctly found unconstitutional because they only serve to limit municipal authority in violation of the home-rule provision of Article XVIII, Section 3 of the Ohio Constitution.

4.

*Standing - First Assignment of Error*

{¶ 10} At the outset, and in addressing appellants' first assignment of error, we find that this action appropriately concerns the home-rule provision and, hence, for purposes of our analysis appellee, a municipality of the state of Ohio, has standing pursuant to Article XVIII, Section 3 of the Ohio Constitution, *infra*, to challenge the statutes which it argues conflict with its ordinance and municipal power. *See*, *e.g.*, *Dayton*, 151 Ohio St.3d 168, 2017-Ohio-6909, 87 N.E.3d 176, at ¶ 12. Accordingly, we find appellants' first assignment of error is not well-taken.

*Home-Rule Analysis*

{¶ 11} When considering the constitutionality of a statute, the presumption is that the legislation is valid. *See id.*, citing *Wilson v. Kasich*, 134 Ohio St.3d 221, 2012-Ohio-5367, 981 N.E.2d 814, ¶ 18. The party challenging the validity of the statute bears the burden of establishing beyond a reasonable doubt that the statute is unconstitutional. *Id.* It is said that the challenging party has "a 'heavy burden' when attempting to overcome the presumption of constitutionality." *Id.*, citing *Rocky River v. State Emp. Relations Bd.*, 43 Ohio St.3d 1, 10, 539 N.E.2d 103 (1989).

{¶ 12} The home-rule provision of the Ohio Constitution provides that "[m]unicipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." *Id.* at ¶ 13; *see also* Article XVIII, Section 3 of the Ohio Constitution. The home-rule provision hence provides independent

5.

authority to Ohio's municipalities to self-govern. *Id*., citing *W. Jefferson v. Robinson,* 1 Ohio St.2d 113, 115, 205 N.E.2d 382 (1965).

{¶ **13**} A municipal ordinance, nevertheless, must yield to a statewide statute if the following elements are met: "(1) the ordinance is in conflict with the statute, (2) the ordinance is an exercise of the police power, rather than of local self-government, and (3) the statute is a general law." *See Canton*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, at ¶ 9.

{¶ **14**} Subsequent to *Canton*, the Supreme Court of Ohio has reordered this test and has stated that the proper sequence to approach a home-rule analysis is as follows: "(1) the ordinance is an exercise of the police power, rather than of local self-government, (2) the statute is a general law, and (3) the ordinance is in conflict with the statute." *See Mendenhall v. Akron*, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, ¶ 17.

{¶ **15**} We, hence, will not proceed in the order and sequence presented by appellants' remaining assignments of error. To be specific, appellants' third and fourth assigned errors attack the second element (general law), and their second attacks the third element (conflict). We will address appellants' assigned errors in the sequence and order as suggested proper in *Mendenhall*. *Id*.

{¶ **16**} Further, we note for appellants to be successful in this appeal and show that there is no home-rule violation, they must support all three elements in their entirety. *Id*. Consequently, we will thoroughly analyze each of the three elements in turn, to reach a proper determination as to whether the ordinance must yield to the statutes.

6.

**Home Rule Element No. 1 – Exercise of Police Power**

{¶ 17} The first element requires review to determine whether the ordinance is an exercise of the police power, rather than an exercise of local self-government. *Mendenhall* at ¶ 18. Appellants do not specifically have an assignment of error dedicated to this element, however, we note that both parties address and argue it in their appellate briefs.

{¶ 18} The Supreme Court of Ohio has held that "[i]f an allegedly conflicting city ordinance relates solely to self-government, the analysis stops, because the Constitution authorizes a municipality to exercise all powers of local self-government within its jurisdiction." (Citation omitted) *Id.* "If, on the other hand, the ordinance pertains to local police, sanitary and other similar regulations, Section 3, Article XVIII, Ohio Constitution, the municipality has exceeded its home rule authority only if the ordinance is in conflict with a general state law." (Quotation omitted) *Id.*

{¶ 19} We initially review the ordinance and generalize its content as we did in *Toledo*, 2016-Ohio-4906, 56 N.E.3d 997, at ¶ 2.

{¶ 20} Under Toledo Municipal Code 313.12, civil penalties are assessed against the owner or driver of a vehicle for red light and speed violations captured by traffic cameras. The program is administered by appellee's Division of Transportation, Police Department, and Department of Law. In the event the camera detects a red light or speeding violation, a "notice of liability" is processed and forwarded to the vehicle-owner's known address. The owner of the vehicle has 21 days from the date of the notice to show that someone else was driving the vehicle or that it was stolen, to pay a $120

7.

civil penalty, or to file an appeal with the hearing officer. Appellee may assess an additional $25 penalty or impound the vehicle for failure to timely respond to the notice, and the right to contest is waived. Citations are not registered under the offender's record, and no points are assigned.

{¶ 21} Appellants simply argue this ordinance is an exercise of police power. While not disputing the enforcement provisions of the ordinance are police powers, appellee counters, arguing "[t]he statutory attempt to govern the minutiae of how a purely local program works at an administrative level is not a regulation of police power, but, rather, a violation of the City's right to dictate on matters of local government." Appellee also argues that R.C. 2506.01 provides for appeals from local administrative decisions and, hence, municipalities "have constitutional and legislative authority to self-govern these ways under their home-rule authority."

{¶ 22} We agree with appellants, and hold the ordinance is an exercise of police power because "the regulation of traffic is an exercise of police power that relates to public health and safety as well as the general welfare of the public." *Id.* at ¶ 14; *Mendenhall*, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, at ¶ 19.

### Home Rule Element No. 2 - General Law

{¶ 23} The second element of the home-rule analysis requires our determination as to whether the contested statutes qualify as "general laws" under the *Canton* general-law test. *Toledo*, 2016-Ohio-4906, 56 N.E.3d 997, at ¶ 14.

{¶ 24} We note appellants' third and fourth assignments of error address the third and fourth prongs of the *Canton* general-law test, respectively.

8.

**{¶ 25}** A general law under the test must:

> (1)  be part of a statewide and comprehensive legislative enactment, (2) apply to all parts of the state alike and operate uniformly throughout the state, (3) set forth police, sanitary, or similar regulations, rather than purport only to grant or limit legislative power of a municipal corporation to set forth police, sanitary, or similar regulations, and (4) prescribe a rule of conduct upon citizens generally.

*Id.* at ¶ 17, citing *Canton*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, at syllabus.

**{¶ 26}** "If a statute meets the *Canton* general-law test, then the statute takes precedence over any conflicting municipal ordinances." *Dayton*, 151 Ohio St.3d 168, 2017-Ohio-6909, 87 N.E.3d 176, at ¶ 15.  "However, if the general-law test is not satisfied, then the statute is 'an unconstitutional attempt to limit the legislative home-rule powers' of municipalities."  *Id.*, citing *Canton* at ¶ 10.

**{¶ 27}** Here, the parties seemingly concede the first and second prongs are satisfied, as their arguments focus squarely on the third and fourth prongs of *Canton's* general-law test.  Therefore we need not address the first and second prongs, and we hold that the contested statutes are part of a statewide and comprehensive legislative enactment which applies to all parts of the state alike and operates uniformly throughout the state.  We will analyze the third and fourth prongs together immediately after introducing the legal standards for each.

9.

*General Law Test - Third Prong - Third Assignment of Error*

**{¶ 28}** For purposes of appellants' third assigned error and the third prong of the general-law test, this court is required "to consider whether the statute sets forth police regulations or whether it merely grants or limits municipalities' legislative power to set forth police regulations." *Id*. at ¶ 16. "In undertaking this analysis, 'a statute which prohibits the exercise by a municipality of its home rule powers without such statute serving an overriding statewide interest would directly contravene the constitutional grant of municipal power.'" *Id*., citing *Canton* at ¶ 32, and *Clermont Environmental Reclamation Co. v. Wiederhold*, 2 Ohio St.3d 44, 48, 442 N.E.2d 1278 (1982).

**{¶ 29}** In *Dayton*, four justices held that three traffic-camera statutes failed this third prong and constituted impermissible intrusions on municipal power. The contested provisions were R.C. 4511.093(B)(1), which required police presence at the location of a traffic camera while in use; R.C. 4511.0912, which prohibited a municipality from issuing a fine for speeding based on a traffic camera unless the driver's speed exceeded the speed limit by 6 or 10 miles per hour; and R.C. 4511.095, which required a municipality to perform a study and public-information campaign before using the cameras. *Dayton*, 151 Ohio St.3d 168, 2017-Ohio-6909, 87 N.E.3d 176, ¶ 21-27.

**{¶ 30}** The *Dayton* court recognized that, "when a statute expressly grants or limits the legislative power of a municipal corporation to set forth police, sanitary, or similar regulations, without serving an overriding statewide interest, then the statute, or a portion of it, violates the Home Rule Amendment." *Id*. at ¶ 20. Applying this rule, the court held R.C. 4511.093(B)(1)'s police-presence provision, R.C. 4511.0912's speeding-

10.

leeway provision, and R.C. 4511.095's study, publish and campaign provision were not serving an overriding statewide interest. *Id*. at ¶ 21-27.

{¶ 31} As with the statutes in *Dayton*, when analyzing under this third prong in this case we will examine the statutory language and determine if it grants or limits municipal power. After determining the language grants or limits municipal power, we will weigh whether the statutes serve an overriding statewide interest. This analysis "requires consideration of the individual statutory provisions." *Id.*

*General Law Test - Fourth Prong - Fourth Assignment of Error*

{¶ 32} For purposes of appellants' fourth assigned error and the fourth prong of the *Canton* general-law test, this court is required to determine whether the statute sets forth a rule of conduct upon citizens generally. *See Am. Fin. Servs. Assn. v. City of Cleveland*, 112 Ohio St.3d 170, 2006-Ohio-6043, 858 N.E.2d 776, ¶ 36.

{¶ 33} A majority of justices in *Dayton* imply the analysis under this fourth prong leads to holding that R.C. 4511.093(B)(1), 4511.0912, and 4511.095 interfere with municipal power by not prescribing a rule of conduct on citizens generally. *Dayton*, 151 Ohio St.3d 168, 2017-Ohio-6909, 87 N.E.3d 176, at ¶ 15, 40 (French, J., concurring). That is to say, these provisions were held unconstitutional because they were found to solely and expressly apply "to municipal legislative bodies." *Id.*, citing *Canton*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, at ¶ 2, 36.

{¶ 34} We find this analysis, like that of the third prong, requires consideration of each of the challenged provisions.

11.

**{¶ 35}** 1. R.C. 4511.093(B)(3)

**{¶ 36}** Under this provision, if a traffic camera records a violation and the officer present does not issue a ticket under division (B)(2) of this section, the local authority may only issue a ticket under R.C. 4511.096 to 4511.0912.

**{¶ 37}** Appellants assert R.C. 4511.093(B)(3) is simply a process provision that prevents local authorities from issuing two citations for the same offense and requires local authorities to issue traffic-camera citations in accordance with other sections of the Ohio camera law. Appellants generally state that this provision establishes a uniform scheme to ensure that traffic cameras operate properly and that violations they capture are processed under uniform, clear standards from which admissible evidence is derived.

**{¶ 38}** Appellee counters, asserting that this provision was invalid because R.C. 4511.093(B)(3) incorporates 4511.0912, which was invalidated in *Dayton.* In invalidating R.C. 4511.0912, the *Dayton* court eliminated the requirement that an officer be present at the location of the traffic camera. Appellee concludes that R.C. 4511.093(B)(3) thus cannot stand as a result. Appellee also generally argues that the provision merely limits municipal power without serving an overriding statewide interest.

**{¶ 39}** Here, we first note that we sever all statutory language which became invalid in *Dayton* and that this severance applies throughout this opinion. As a result, what remains of R.C. 4511.093(B)(3) essentially states that if the municipality does not issue a ticket under R.C. 4511.093(B)(2), then the municipality "may only issue a ticket in accordance with sections 4511.096 to 4511.0912."

12.

**{¶ 40}** We find this remaining language limits appellee's municipal power, and that it serves no statewide purpose aside from loosely mandating policy which may or may not be enforced uniformly. Specifically, the mandatory "may only" language severely limits the way in which the municipality can issue a ticket. We are not persuaded by appellants' stated purpose or concerns regarding uniformity of traffic-camera law and, accordingly, hold that R.C. 4511.093(B)(3) fails to satisfy the third prong of the general-law test of *Canton*.

**{¶ 41}** Appellants next argue R.C. 4511.093(B)(3) establishes a rule to govern citizens and local authorities on the issuance and contesting of traffic-camera citations. Appellants argue that citizens and local authorities alike must abide by this provision.

**{¶ 42}** Appellee contends the phrasing of R.C. 4511.093(B)(3) is not directed toward citizens but, rather, is directed and applied solely and expressly to municipalities that enacted traffic-camera laws.

**{¶ 43}** We find R.C. 4511.093(B)(3), like those statutes invalidated in *Dayton*, interferes with municipal power by not prescribing a rule of conduct on citizens generally. The language is directed to the municipality and its officers, not citizens. Thus, we hold R.C. 4511.093(B)(3) fails to satisfy the fourth prong of the *Canton* general-law test.

**{¶ 44}** Overall, R.C. 4511.093(B)(3) satisfies the first and second prongs of *Canton*, but not the third and fourth.

13.

**{¶ 45}** 2. R.C. 4511.096

**{¶ 46}** Under division (A) of R.C. 4511.096, an officer must examine evidence of an alleged traffic law violation recorded by the device to determine if a violation has occurred, and if the image shows a violation, contains the date and time of the violation, and clearly shows the license plate, the officer may use lawful means to identify the owner. Under division (B), the fact that a person or entity is owner of a vehicle is prima facie evidence the person or entity was operating the vehicle at the time of the violation. Under division (C), within 30 days of the traffic law violation, the local authority may issue and send by regular mail a ticket charging the owner, and the ticket must comply with R.C 4511.097. Lastly, division (D) provides that a certified copy of the ticket, sworn to or affirmed by an officer, including by electronic means, and the recorded images produced by the traffic camera, is prima facie evidence and is admissible in a proceeding for review.

**{¶ 47}** Appellants generally assert R.C. 4511.096 is a process provision that requires local authorities to examine evidence, to determine if a violation occurred, to identify and notify driver or owner of the violation, and to properly fine and commence the administrative process against the person or entity held responsible. Appellants further argue this statute establishes uniform standards for the admissibility of evidence derived from traffic cameras.

**{¶ 48}** Appellee contends this statute reveals appellants' attempt to micromanage municipalities that have enacted traffic-camera laws, and that the statute and its parts merely limit municipal power rather than serve an overriding statewide interest.

14.

{¶ 49} We find the language of R.C. 4511.096 limits appellee's municipal power, as it attempts to control and dictate to the municipality the way in which it must act with regard to citing citizens with citations derived from traffic cameras. Moreover, we find the provision does not serve an overriding statewide interest. Therefore, we hold that R.C. 4511.096 fails to satisfy the third prong of the general-law test.

{¶ 50} Appellants also argue R.C. 4511.096 establishes rules to govern both citizens and local authorities on the issuance and contesting of traffic-camera citations. Appellee contends the phrasing and effect of R.C. 4511.096 are not directed or impactful for and toward citizens but, rather, is directed and applied solely and expressly to municipalities.

{¶ 51} We find R.C. 4511.096 interferes with municipal power by not prescribing a rule of conduct on citizens generally. We agree the *thou-shalt* and *thou-shalt-not* language of the statute is directed to municipalities rather than Ohio citizenry generally. Thus, we hold R.C. 4511.096 fails to satisfy the fourth prong of the *Canton* general-law test.

{¶ 52} Overall, R.C. 4511.096 satisfies the first and second, but not the third and fourth, prongs of the general-law test.

{¶ 53} 3. R.C. 4511.097

{¶ 54} Under division (A) of R.C. 4511.097, a violation for which a ticket is issued by a local authority pursuant to R.C. 4511.093(B)(3) is a civil violation, and the ticket must comply with the requirements of this section and the fine for such a ticket must not exceed the amount assessed for a substantially equivalent traffic law violation.

15.

Under division (B), a local authority must process a ticket and shall send the ticket by ordinary mail to the owner of the vehicle, and there are further details of what the local authority must ensure the ticket contains. Under division (C), a local authority must send a ticket within 30 days after the violation. And lastly, under division (D), the local authority may elect to send by ordinary mail a warning notice instead of a ticket.

{¶ 55} Appellants argue R.C. 4511.097 is a process provision that establishes a uniform scheme to ensure that violations caught by traffic camera are processed under uniform, clear standards. Appellee counters, stating that the statute merely limits its home-rule authority rather than serve an overriding statewide interest.

{¶ 56} We find the language of all divisions of R.C. 4511.097 limits appellee's municipal power by unreasonably dictating the minutia of municipality process. We are not convinced that the provision serves an overriding statewide interest. We therefore hold that R.C. 4511.097 fails to satisfy the third prong of the *Canton* general-law test.

{¶ 57} Appellants further argue R.C. 4511.097 establishes rules to govern citizens and local authorities on the issuance and contesting of traffic-camera citations. Appellee contends the phrasing of R.C. 4511.097 is not directed toward citizens but, rather, is directed and applied solely and expressly to municipalities.

{¶ 58} Based on its language, we find R.C. 4511.097 interferes with home-rule authority by not prescribing a rule of conduct on citizens generally. The language is directed at local authorities, not Ohio citizenry. Thus, we hold R.C. 4511.097 fails to satisfy the fourth prong of the *Canton* general-law test.

16.

{¶ 59} Overall, R.C. 4511.097 only satisfies the first and second, not the third and fourth, prongs of the general-law test.

{¶ 60} 4. R.C. 4511.098

{¶ 61} Under division (A) of R.C. 4511.098, a person or entity who receives a ticket for a violation sent in compliance with R.C. 4511.097 must pay or otherwise contest the ticket. Under division (B), a local authority that receives an affidavit or a notification from an owner may send a ticket that conforms with R.C. 4511.097(B) to the designated party, and the local authority must send the ticket to the designated party by ordinary mail within 21 days after receipt of the affidavit or notification.

{¶ 62} Appellants argue R.C. 4511.098 is a process provision that establishes a uniform scheme to ensure that violations caught by traffic camera are processed and challenged under uniform, clear standards and contesting procedures. Appellee counters, stating that the provision merely limits its home-rule authority rather than serve an overriding statewide interest.

{¶ 63} Based on our review, R.C. 4511.098 limits appellee's municipal power by micromanaging municipal affairs, and we are not convinced the provision serves an overriding statewide interest. We thus hold that R.C. 4511.098(A) fails to satisfy the third prong of the *Canton* general-law test.

{¶ 64} Appellants further argue R.C. 4511.098 establishes rules to govern citizens and local authorities on the issuance and contesting of traffic-camera citations. Appellants specify that this statute is actually directed to citizens, although both citizens and local authorities must abide by it and the interrelated provision, R.C. 4511.097.

17.

**{¶ 65}** Appellee counters, asserting that the actual effect of R.C. 4511.098 is to govern and limit home-rule authority granted to municipalities.

**{¶ 66}** Based on our analysis, we find R.C. 4511.098 interferes with home-rule authority by not prescribing a rule of conduct on citizens generally because its language impacts municipalities and only those citizens dealing with those local authorities implementing traffic-camera processes. Accordingly, we hold R.C. 4511.098 fails to satisfy the fourth prong of the general-law test of *Canton*.

**{¶ 67}** Overall, R.C. 4511.098 only satisfies the first and second prongs of the general-law test, not the third and fourth.

**{¶ 68}** 5. R.C. 4511.099(A)-(F).

**{¶ 69}** Under division (A) of R.C. 4511.099, four requirements are detailed that apply when a person or entity elects to contest the ticket and timely completes the requirements prescribed in R.C. 4511.098(A)(5). These requirements mandate that the hearing officer conducts a hearing in which the requester can present evidence and from which the hearing officer is to make a determination based on the preponderance of evidence.

**{¶ 70}** Under division (B), the hearing officer must render a written decision on the day of the hearing and several ways are stated in which the hearing officer can proceed in the event the requester is either absolved or liable.

**{¶ 71}** Under division (C), several affirmative defenses are offered to the requester, and there is also mention of how the hearing officer's considerations may be determined under totality of the circumstances.

18.

{¶ 72} Under division (D), once the hearing officer determines the individual liable is not the requester or receives evidence of the person who is liable, the officer must notify the authorities within five days and then the local authority can issue a ticket. It continues, stating that the local authority must ensure the ticket issued conforms with R.C. 4511.097(B), and the local authority must send the ticket by ordinary mail within 21 days after receipt of the evidence from the hearing officer or the owner.

{¶ 73} Division (E) provides that if a ticket is contested by the filing of a written request for an administrative hearing within 30 days, the local authority must require the owner of the vehicle to attend. If at the hearing the hearing officer cannot determine the identity of the violator, the owner is liable. The hearing officer then must issue a written decision imposing liability for the violation on the owner and submit it to the local authority and the owner. If the designated party also is an owner, liability for the violation must follow the order of owners as listed on the title.

{¶ 74} Under division (F), a person who is named in a ticket may assert a testimonial privilege in a hearing in accordance with R.C. 2317.02(D).

{¶ 75} Appellants argue division (A) through (F) of R.C. 4511.099 establish a uniform scheme to ensure that violations caught by traffic-camera are processed under uniform, clear standards. Appellee counters, stating that division (A) through (F) merely limit its home-rule authority rather than serve an overriding statewide interest.

{¶ 76} We find R.C. 4511.099(A) through (F) limit appellee's municipal power by mandating specific processes and procedures for the municipality to follow and adhere to when implementing its traffic-camera law. We are not convinced there is an overriding

19.

statewide interest related to uniformity of traffic-camera law and, thus, we hold R.C. 4511.099(A) through (F) fail to satisfy the third prong of the *Canton* general-law test.

{¶ 77} Appellants also generally argue R.C. 4511.099 establishes a rule to govern citizens and local authorities on the issuance and contesting of traffic-camera citations. Appellee contends R.C. 4511.099(A) through (F) are not directed toward citizens but, rather, are directed and applied solely and expressly to administrative officers selected and employed by municipalities that have enacted traffic-camera laws.

{¶ 78} We find R.C. 4511.099(A) through (F) interfere with home-rule authority by not prescribing a rule of conduct on citizens generally because the language is directed and applies to administrative officers of those municipalities that have adopted traffic-camera laws, rather than Ohio citizenry generally. We thus hold R.C. 4511.099(A) through (F) fail to satisfy the fourth prong of the general-law test.

{¶ 79} Overall, R.C. 4511.099 only satisfies the first and second, but not the third and fourth, prongs of the general-law test.

{¶ 80} 6. R.C. 4511.099(G) and (H).

{¶ 81} Under division (G) of R.C. 4511.099, a person or entity may appeal a written decision rendered by a hearing officer to the municipal court or county court with jurisdiction over where the violation occurred. Under division (H), no decision rendered or admission of liability under this section or R.C 4511.098, is admissible as evidence in any other judicial proceeding in this state.

20.

**{¶ 82}** Appellants argue R.C. 4511.099 is a process provision that establishes a uniform scheme and regulates the jurisdiction of courts relating to traffic-camera violations.

**{¶ 83}** Appellee concedes R.C. 4511.099(G) does not infringe on its home-rule authority, as municipalities do not have "the power to regulate the jurisdiction of courts established by the Constitution or by the General Assembly thereunder." *See Cupps v. Toledo*, 170 Ohio St. 144, 150, 163 N.E.2d 384 (1959). We therefore hold that R.C. 4511.099(G) satisfies the third and fourth prongs of the *Canton* general-law test.

**{¶ 84}** With respect to division (H), appellants assert it outlines process and uniform standards to exclude municipality administrative evidence and judgments from being admitted in other tribunals throughout Ohio, and that it establishes a rule to govern both citizens and local authorities on the issuance and contesting of traffic-camera citations.

**{¶ 85}** Appellee contends division (H) merely limits municipal power rather than serve an overriding statewide interest, and that the phrasing of R.C. 4511.099(H) is not directed toward citizens but, rather, is directed and applied solely and expressly to municipalities.

**{¶ 86}** Because we read division (H) to be jurisdictional in nature, such as we found with division (G), we cannot say it limits appellee's home-rule authority in violation of the Ohio Constitution, as the language regulates the procedural and subject-matter jurisdiction of Ohio courts. *Cupps*. We hold R.C. 4511.099(H) satisfies the third and fourth prongs of the *Canton* general-law test.

21.

{¶ 87} Overall, we hold that R.C. 4511.099(G) and (H) satisfy all four prongs of the *Canton* general-law test.

{¶ 88} 7.  R.C. 4511.0911

{¶ 89} Division (A) of R.C. 4511.0911 provides that on request, each manufacturer of a traffic-law camera must provide to a local authority the maintenance record of any such camera used.  Under division (B), a manufacturer of a traffic camera must provide the local authority with a certificate of proper operation that attests to accuracy, and in the division there are two requirements listed for every camera that is considered mobile.  Under division (C), if three conditions are met, the local authority cannot issue a ticket based on evidence recorded by a camera where a vehicle makes a turn-on-red-signal.

{¶ 90} Appellants generally assert that R.C. 4511.0911 is a maintenance and certification provision that establishes a uniform scheme to ensure that the traffic cameras utilized are reliable and accurate, and that division (C) specifically establishes uniform standards for the admissibility of evidence to ensure turn-on-red-signal violations are processed and addressed under uniform, clear standards and processes.

{¶ 91} Appellee contends divisions (A) and (B) merely limit municipal power by interfering with the contractual relationship between the manufacturer and municipality, and that division (C) limits municipal home-rule power by placing unnecessary constraints on and micromanaging municipal affairs.

22.

{¶ 92} We agree with appellee, and find divisions (A) and (B) limit appellee's home-rule authority by mandating that the municipality contract for a service from the manufacturer for which the municipality may or may not have otherwise contracted. There is no overriding statewide interest to place such constraints on the contractual relationship between the municipality and manufacturer. Additionally, we find the language of division (C) limits appellee's authority because it is solely aimed at micromanaging the administrative affairs of the municipality. Therefore, we hold that R.C. 4511.0911 fails to satisfy the third prong of the general-law test of *Canton*.

{¶ 93} Appellants further argue generally that R.C. 4511.0911 establishes a rule to govern citizens and local authorities on the issuance and contesting of traffic-camera citations. Appellee contends R.C. 4511.0911 is not directed toward citizens but, rather, is directed and applied to municipalities and the party with whom they contract.

{¶ 94} Based on our review, R.C. 4511.0911(A) and (B) are directed to the municipality and mandate that it contract for a service from the manufacturer for which the municipality may or may not have otherwise contracted. We find no clear application of the language outside of this directing action, and find that R.C. 4511.0911(C) interferes with home-rule authority by not prescribing a rule of conduct on citizens generally because the provision is directed at local authorities. Accordingly, we hold R.C. 4511.0911 fails to satisfy the fourth prong of the *Canton* general-law test.

{¶ 95} Overall, R.C. 4511.0911 only satisfies the first and second prongs of *Canton* general-law test, not the third and fourth.

23.

**Home Rule Element No. 3 - Conflict**

{¶ 96} For purposes of appellants' second assigned error and the third element of the home-rule analysis, the Supreme Court of Ohio has articulated the following three theories or approaches "to prove either the presence or absence of a conflict[:]" (1) contrary directives; (2) conflict by implication; and, (3) conflict regarding decimalization. *Mendenhall*, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, at ¶ 28.

*Contrary Directives*

{¶ 97} Under the first approach or theory, the question is whether the ordinance at issue "permits or licenses that which the statute prohibits and vice versa." *Id*. at ¶ 29, citing *Am. Fin. Servs. Assn.*, 112 Ohio St.3d 170, 2006-Ohio-6043, 858 N.E.2d 776. "No real conflict can exist unless the ordinance declares something to be right which the state law declares to be wrong, or vice versa[,]" and the contrary-directives test is met "if the ordinance and statute in question provide contradictory guidance." *Id.*

{¶ 98} Appellants argue that, aside from R.C. 4511.0911(B)(2)(b), appellee has not articulated how its ordinance is in conflict with the statewide traffic-camera statutes. Appellants argue that appellee is even incorrect in its analysis of R.C. 4511.0911(B), arguing there is no conflict at all because the ordinance does not declare something lawful which the statutes declare unlawful, or vice versa, and because the ordinance and statutes do not provide contradictory guidance. Appellants even go so far as to assert that appellee does not have standing to challenge the statutes because there is no contrary directives.

24.

{¶ 99} Appellee contends that sufficient conflict exists between the ordinance and statutes to warrant judicial review. Appellee further asserts that each of the challenged statutes have a limiting effect that equates to a conflict where its ordinance governs the same conduct but does not provide for the same guidance standards or processes.

{¶ 100} As examples, appellee argues that R.C. 4511.0911 imposes several duties on parties with whom appellee contracts, there imposing drastically different standards and processes than the ordinance; and, that R.C. 4511.093(B)(3) requires an officer be present at the traffic camera when a violation is captured, there imposing different standards and processes.

{¶ 101} Again, we sever the language requiring an officer be present, in accordance with *Dayton*. Next, we "examine the actual conduct that both the state statute and the municipal ordinance target[.]" *Id*.

{¶ 102} Here, that conduct is unlawful driving or red-light/speeding violations (captured by traffic cameras). We note that the ordinance does not change the existing traffic laws pursuant to which these violations are imposed. *See* R.C. 4511.12 and 4511.21.

{¶ 103} More specifically, appellee's traffic cameras are automated red-light and speeding systems, which are intended to capture the red-light or speeding offenses in violation of R.C. 4511.12 and 4511.21. However, the ordinance does not alter or conflict with those statewide statutes. *Id*. Accordingly, because the "ordinance does nothing more than prohibit the same conduct prohibited by state statute, there is no conflict between the two." *Mendenhall*.

25.

*Conflict by Implication*

**{¶ 104}** Under the second conflict approach or theory, "we examine whether the General Assembly indicated that the relevant state statute is to control a subject exclusively." *Mendenhall*, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, at ¶ 32, citing *City of Cincinnati v. Baskin*, 112 Ohio St.3d 279, 2006-Ohio-6422, 859 N.E.2d 514, ¶ 23. This second approach or theory "recognizes that sometimes a municipal ordinance will indirectly prohibit what a state statute permits or vice versa." *Id*. at ¶ 31.

**{¶ 105}** Appellants assert that in December of 2014, the General Assembly passed statewide statutes to establish uniform standards and processes for the implementation and operation of traffic cameras. Appellee contends appellants are solely seeking to limit municipal power with the statewide statutes, and note that it passed its legislation before appellants.

**{¶ 106}** Based on our review, the general purpose of the statutes and ordinance is to capture traffic violations by way of camera and to impose a civil fine consistent with due process principles for a violator who is presumed to be the vehicle owner. *See* Toledo Municipal Code 313.12 (titled "Civil penalties for automated red light system violations."); R.C. 4511.093 (titled "Use of traffic law photo monitoring device.).

**{¶ 107}** The statewide statutes, nevertheless, make clear that they were crafted and promulgated to allow for local authorities to "utilize a traffic law photo-monitoring device for the purpose of detecting traffic law violations." *See* R.C. 4511.093(A). Thus

26.

we cannot say the General Assembly indicated that the relevant state statutes were to control a subject exclusively and, accordingly, there is no conflict under this approach or theory.

*Conflict Regarding Decriminalization*

{¶ 108} Under the third approach or theory to find conflict, "a municipal ordinance is in conflict with state law when there is a significant discrepancy between the punishments imposed for that behavior." *Mendenhall*, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, at ¶ 35. "When a municipal ordinance varies in punishment with the state statute such ordinance is not in conflict with the statute when it only imposes a greater penalty." *Id.*, citing *City of Niles v. Howard*, 12 Ohio St.3d 162, 165, 466 N.E.2d 539 (1984). "However,* * *if the municipal ordinance does more than simply impose a greater penalty – by changing the character of an offense, for example – the ordinance and statute are in conflict." *Id.*, citing *Cleveland v. Betts*, 168 Ohio St. 386, 389, 154 N.E.2d 917 (1958).

{¶ 109} No argument of the parties fits squarely within this analysis. Nevertheless, we find that the ordinance does not conflict in the relevant sense because both call for imposition of a civil violation, and there is no significant or notable discrepancy between the punishments the ordinance and statutes impose.

{¶ 110} Accordingly, appellants' second assignment of error is well-taken.

## Conclusion

{¶ 111} The July 10, 2018 judgment of the Lucas County Court of Common Pleas is affirmed in part, and reversed in part. We affirm the trial court's determination that

27.

R.C. 4511.093(B)(3), 4511.096, 4511.097, 4511.098, 4511.099, and 4511.0911(A) and

(B), violate home-rule analysis.  We further affirm the trial court's determination that

R.C. 4511.099(G) is not in violation of the home-rule; nevertheless, we reverse the trial

court judgment as it relates to R.C. 4511.099(H), which we find also does not violate the

home-rule analysis.  The parties are ordered to share in the costs of this appeal.  App.R.

24.

Judgment affirmed, in part,
and reversed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.
*See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.                 _____

                                                           JUDGE

Arlene Singer, J.                     

                                              _____

Thomas J. Osowik, J.                    JUDGE
CONCUR.

                                                _____

                                                       JUDGE

---

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.

---